JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Lamont Jones, aka, O'Neil Crenshaw, appeals his intimidation conviction on sufficiency and manifest weight of the evidence grounds. We affirm.
 {¶ 2} Appellant was indicted in July 2006 on one count of intimidation, a felony of the third degree in violation of R.C. 2921.04, and one count of aggravated menacing, a misdemeanor of the first degree in violation of R.C. 2903.21. After a jury trial, appellant was found guilty of intimidation and not guilty of aggravated menacing. He was sentenced to a two-year prison term.
 {¶ 3} At trial, the victim, Mahogany Luster, testified that on June 29, 2006, she and her cousins Tiawanna and Tasha Luster had been together at a bar in the city of Cleveland. When they left the bar, they walked to Tasha's house and sat on the front porch for approximately 30 minutes before Tiawanna left to go to her own home. Shortly after Tiawanna left, appellant arrived at Tasha's house and asked Mahogany where Tiawanna, his girlfriend, was. Mahogany told appellant that Tiawanna had gone to the store. She explained that she was skeptical of appellant's motives and did not want to tell him that Tiawanna had gone home.
 {¶ 4} Appellant then left Tasha's house and, according to Mahogany, had a look on his face that "just [didn't] feel right." Mahogany explained that, based on past experiences between appellant and Tiawanna, she was afraid of what he would do. Mahogany further testified that on a previous occasion, appellant came to *Page 4 
Tasha's house looking for Tiawanna and upon finding her there, acted violently toward her and the others who were in the home.
 {¶ 5} Mahogany also testified that on the evening in question, she repeatedly called Tiawanna to attempt to let her know appellant was looking for her; her calls were unanswered, however, until approximately the 12th call. Mahogany explained that when Tiawanna answered the phone, she heard her say "help me, oh my god, oh my god," a male voice say "bitch, shut up," and then Tiawanna say "come get me, come get me." Mahogany testified that she immediately drove to Tiawanna's house because she was concerned about her.
 {¶ 6} Upon arriving at Tiawanna's house, Mahogany stayed outside, where she could hear both Tiawanna and appellant screaming at each other. Mahogany then called the police and told them that she believed her cousin was being beaten and was in danger. While on the phone with the police, Tiawanna ran out of the house; Mahogany tried to get Tiawanna to come with her, but was unsuccessful. Shortly thereafter, appellant ran out of the house, saw Mahogany, went back inside the house, and came back out approximately five minutes later with new clothes on. Mahogany convinced appellant that the two of them should look for Tiawanna together. Mahogany was still on the phone with the police dispatcher and gave a description of herself and her location.
 {¶ 7} The police arrived and asked Mahogany if appellant was the individual involved in the incident with her cousin. When she replied that he was, appellant yelled at Mahogany, "[b]itch, I'm going to kill you." As the police continued to talk to *Page 5 
Mahogany, appellant continued to threaten her. Officer George Janusczak testified that appellant appeared to be very upset that Mahogany was relaying information about him to the police. The officer further testified that he heard appellant threatening Mahogany and that it was his opinion that appellant was not being facetious. Mahogany testified that she was afraid for her life. Mahogany also testified that, early the following morning, appellant called her and threatened her again.
 {¶ 8} The defense made a Crim.R. 29 motion for acquittal at the close of the State's case, which was denied. Tiawanna then testified for the defense. Tiawanna explained that appellant arrived at her home shortly after she got there. The two argued and she called Tasha's house for help because she was trying to get away from appellant. She testified that during the course of their argument, appellant struck her and she hit him on his head with a vase. When Tiawanna left the house, she saw Mahogany and heard her trying to persuade her to come with her, but she went to a friend's house instead. Tiawanna went back home while the police were still on the scene. She told the police that she did not wish to press charges against appellant because no incident had transpired between them.
 {¶ 9} At the conclusion of its case, the defense renewed its Crim.R. 29 motion for acquittal, which the trial court again denied.
 {¶ 10} In his two assignments of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the evidence was *Page 6 
insufficient to support a conviction, and that the conviction was against the manifest weight of the evidence, respectively.
 {¶ 11} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v.Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668. In the simplest sense, the difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion.Thompkins at 390 (Cook, J., concurring).
 {¶ 12} Sufficiency is a question of law. Id. at 386; Smith, supra at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.Thompkins at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins at 386; Smith at 113.
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. *Page 7 Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 14} Manifest weight is a question of fact. Thompkins at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. Under this construct, the appellate court "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." Id.
 {¶ 15} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." Thompkins at 387. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review *Page 8 
attaches to the conclusion reached by the trier of fact."). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 16} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency when conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins at 388. In the present case, manifest weight is dispositive.
 {¶ 17} R.C. 2921.04(B) governs intimidation and provides:
 {¶ 18} "No person, knowingly and by force or by un lawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 19} Appellant contends that the State failed to prove that the statement he made while on the scene constituted a threat or coercion because Mahogany was cooperating with the police. We disagree. Mahogany testified that she was relaying information to the police about what she believed was a domestic violence incident that had occurred between appellant and Tiawanna, when appellant started yelling threats at her. Officer Janusczak also testified that appellant appeared very upset that Mahogany was relaying information about him to the police. The officer heard appellant make the threats and believed that he was not being facetious. Mahogany *Page 9 
further testified that early the next morning, appellant called her and again threatened her. She testified that she was afraid for her life.
 {¶ 20} Based on this evidence, appellant has failed to demonstrate that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, his two assignments of error are overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR. *Page 1